UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TRIPLE S MARINE, LLC** | **CIVIL ACTION NO:** |
| **VERSUS** | **DISTRICT JUDGE HON.** |
| **PONTCHARTRAIN PARTNERS, LLC** | **MAGISTRATE JUDGE HON.** |

## COMPLAINT

Now into Court comes Triple S Marine, LLC, which avers as follows:

### Parties, Venue, and Jurisdiction

1.

Triple S Marine, LLC is a Louisiana limited liability company and an operator of vessels, licensed to do business and doing business in this district.

2.

Pontchartrain Partners, LLC is a Louisiana limited liability company and operator of barges, licensed to do business and doing business in this district.

3.

Venue is proper in this judicial district because the incident made basis of this suit occurred within the Intracoastal Waterway within this judicial district.

4.

Jurisdiction is proper under 28 U.S.C. 1333 because the incident made basis of this suit involves the transport of barges and salvage of a barge, in a navigable waterway.

**Facts**

5.

During the course of 2020 and into 2021, Triple S Marine was regularly working for Pontchartrain Partners, pushing barges as directed by Pontchartrain Partners.

6.

On or about January 25, 2021, the M/V NATALIE D, a vessel owned and operated by Triple S, took into its tow six barges, including the GD 952.

7.

The GD 952 was a barge built in 1995 and owned by Glenn Daulton but bareboat-chartered to Pontchartrain Partners.

8.

The M/V NATALIE D proceeded with a six pack of barges, including the GD 952, in the Intracoastal Waterway without incident over the 26th and 27th of January.

9.

Then, on January 28, the GD 952 began taking on water and listing, rapidly. The M/V NATALIE D immediately pushed the barge to the bank of the ICW, preventing it from sinking – and preventing the likely loss of the other five barges in tow, and preventing the likely loss of the M/V NATALIE D.

10.

Triple S Marine promptly informed Pontchartrain Partners of the issue with the GD 952. Pontchartrain Partners asked Triple S Marine to do everything in Triple S's power to save the barge and then salvage the barge.

11.

Acting with full knowledge and approval of Pontchartrain Partners, Triple S Marine mobilized its own crew and others to lighter the GD 952 so it could be patched and floated off. This included divers to patch the barge, and a crane barge to lighter the barge. Triple S Marine extended payment guarantees to these companies it mobilized.

12.

Pontchartrain Partners, as the bareboat charterer of the GD 952, was obligated under the Wreck Act to remove the GD 952 and prevent it from becoming a hazard to navigation.

13.

Thanks to Triple S's prompt action and the actions of the companies Triple S hired, the GD 952 did not sink, and it could be patched and towed to a safe berth.

14.

During the salvage of the GD 952, it became apparent to Triple S for the first time that the GD 952 was not a seaworthy barge. Instead, it had significant open wastage in the interior bulkheads of the barge. This wastage allowed open communication of water, so once water began entering the hull of the barge, rather than being limited to one compartment, it could flood the entire barge.

15.

Further, during the salvage of the GD 952, Triple S Marine learned that the GD 952 had been repaired before Triple S Marine took it into tow with wooden shingles, and these wooden shingles were the only thing stopping water from entering the barge. A photograph of those wooden shingles is attached to this lawsuit as exhibit A.

16.

In addition, Triple S Marine found multiple shingles afloat and bulkhead fractures. Photographs are attached as Exhibit B. There were likewise gaps in manholes and incompletely sealed manholes, rags serving as gaskets, and significant wastage in the interior of the barge, in addition to significant further findings, indicating that the barge was unseaworthy and should never have been used by Pontchartrain Partners.

17.

At a joint survey that occurred during a drydock of the barge, there was zero evidence of any scraping or rubbing near any of the holes in the barge, or any other indication that there was any collision, allision, rubbing, or any other sort of event caused by the tow – the multiple water inlets showed significant marine growth, which is incompatible with recent damage.

18.

Instead, the cause of the casualty was the inevitable movement of the wooden shingles that allowed water to enter the barge rapidly, and Pontchartrain Partners putting into service an unseaworthy barge with wooden shingles as a patch, rather than a proper repair. Furthermore, the wastage in the interior bulkheads ensured that once water was allowed into the barge, it would flood the entire barge, causing it to sink.

19.

As a consequence of the barge's unseaworthiness, Triple S Marine has incurred over $100,000 in damages in its own time and materials, and in the time and materials of those companies it hired, to lighter and remove the barge.

20.

The negligence of Pontchartrain Partners in keeping in service the GD 952 was the proximate and direct cause of Triple S Marine's damages, making Pontchartrain Partners responsible for Triple S's damages.

21.

In the alternative, Triple S Marine's work for Pontchartrain Partners in lightering and removing the GD 952 was under contractual salvage, making Pontchartrain Partners responsible for Triple S's damages, including those of the contractors Triple S hired.

22.

Triple S made demand to Pontchartrain Partners on February 4, 2021, within a week of the casualty. To date, Pontchartrain Partners has not acknowledged responsibility for the loss.

23.

The condition of the GD 952 was egregious, and the GD 952 had been under the control of Pontchartrain Partners since March 18, 2020. Keeping the barge in service endangered not just property, but also the lives of the crew of the M/V NATALIE D. Pontchartrain Partners' failure to maintain the barge in anywhere near adequate condition rises to the level of gross negligence, making Pontchartrain Partners liable to Triple S for punitive damages.

WHEREFORE, Triple S Marine prays that there be judgment in its favor, finding that the loss of the GD 952 is the sole fault of Pontchartrain Partners, and awarding Triple S Marine its damages, and those of the companies it hired, in salvaging the GD 952, as well as attorney's fees and punitive damages in an amount to be found by this Court, along what any other equitable relief this Court deems just and proper.

Respectfully submitted:

**BOHMAN | MORSE, LLC**

/s/Harry E. Morse
HARRY E. MORSE (#31515)
MARTIN S. BOHMAN (#22005)
400 POYDRAS STREET, SUITE 2050
NEW ORLEANS, LA 70130
TELEPHONE: (504) 930-4009
FAX: (888) 217-2744
E-MAIL: HARRY@BOHMANMORSE.COM
E-MAIL: MARTIN@BOHMANMORSE.COM

*Attorneys for Triple S. Marine, LLC*